HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALAN MANCHESTER, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>CECO CONCRETE<br>CONSTRUCTION, LLC,<br><br>            Defendant. | CASE NO. C13-832 RAJ<br><br>ORDER |

This matter comes before the court on defendant Ceco Concrete Construction, LLC's ("Ceco") motion to compel arbitration and stay proceedings, and alternatively, to dismiss for failure to state a claim. Dkt. # 5. Plaintiffs Alan Manchester, Suzanne Manchester, and Bedrock Floors, Inc. ("Bedrock") oppose the motion.[1]  Dkt. # 12.

Plaintiffs allege the following claims against Ceco:  (1) breach of contract (by Mr. Manchester); (2) breach of implied duty of good faith (by Mr. Manchester); (3) quantum meruit (by Mr. Manchester); (4) unjust enrichment (by

---

[1] Neither party has requested oral argument.  This matter may be decided on the papers submitted.

ORDER- 1

Mr. Manchester); (5) breach of implied employment agreement (by Mr. Manchester); (6) misrepresentation (by Mr. and Mrs. Manchester); (7) fraud (by Mr. and Mrs. Manchester); and (8) overturning of arbitration award (by Bedrock).[2] Dkt. # 1-1 (Compl.) ¶¶ 35-52.

**A. Arbitration**

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The parties appear to agree that Hawaii law applies to the issue of whether the parties agreed to arbitration. When presented with a motion to compel arbitration, the court is limited to answering two questions: (1) whether an arbitration agreement exists between the parties; and (2) if so, whether the subject matter of the dispute is arbitrable under such agreement. *Koolau Radiology, Inc. v. Queen's Med. Ctr.*, 834 P.2d 1294, 1300 (Haw. 1992); *see* Haw. Rev. Stat. ("HRS") § 658A-7. The party seeking to compel arbitration carries the initial burden of establishing that an arbitration agreement exists between the parties. *Siopes v. Kaiser Found. Health Plan, Inc.*, 312 P.3d 869, 878 (Haw. 2013). If this initial burden is met, the burden shifts to the opposing party to present evidence on its defenses to the arbitration agreement. *Id.*

"Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate. Without an agreement to arbitrate, a court may not force parties to engage in arbitration." *Id.* Thus, both the FAA and HRS ch. 658A interpose a written and valid contract to arbitrate as a precondition to enforcement. *Id.* at 879. In order to be valid and enforceable, an arbitration agreement (1) must be in

---

[2] As the court notes below, "punitive damages" is not an independent cause of action, but, rather, a remedy.

ORDER- 2

writing,[3] (2) must be unambiguous as to the intent to submit disputes or controversies to arbitration, and (3) must have bilateral consideration. *Id.* (citing *Douglass v. Pflueger Hawaii, Inc.*, 135 P.3d 129, 140 (Haw. 2006)). With respect to the second requirement, there must be a mutual assent or meeting of the minds on all essential terms to create a binding contract. *Id.* The existence of mutual assent or intent to accept is determined by an objective standard. *Id.*

Additionally, the court can only decide, as a matter of law, whether to compel the parties to arbitrate their disputes if there is no genuine issue of material fact regarding the existence of a valid agreement to arbitrate. *Koolau Radiology*, 834 P.2d at 1295; *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("Because denial of a motion to compel arbitration has the same effect as a grant of partial summary judgment denying arbitration, [plaintiff's] motion for partial summary judgment was the functional equivalent of an opposition to [defendant's] motion, and we will treat it as such.").

Ceco argues that the employment contract between Ceco and Mr. Manchester included an arbitration provision that must be enforced. Dkt. # 5 at 2. The only written document Ceco provides to the court evidencing the purported employment contract is the employee handbook.

However, the employee handbook expressly demonstrates Ceco's intent that it not be construed as a contract. Dkt. # 6-1 at 4 (Ex. 2 to Farrington Decl.) ("This employee handbook is a general information guide to inform employees about current company policies and programs. The policies, programs, and benefits are for your general information and do not constitute terms or conditions of employment. This handbook is not a contract."). Accordingly, the court finds that the employee handbook is not an

---

[3] Neither party disputes that the arbitration provision is in writing.

employment agreement where the unambiguous language in the handbook demonstrates Ceco's intent that the handbook not be a contract.

Ceco also appears to argue that the arbitration clause in the handbook is a separate agreement that Mr. Manchester signed along with other provisions of the employee handbook.  Dkt. ## 5 (Mot.) at 2-3 & 14 (Reply) at 8-9.

Pursuant to *Douglass* and *Siopes*, the court looks beyond the language of the arbitration provision to the surrounding circumstances presented.[4]  *Siopes*, 312 P.3d at 883-84.  In *Douglass*, the court considered the surrounding circumstances and reasoned that Douglass "merely acknowledged his receipt and understanding of the items" in the handbook, and that he "never expressed assent to the terms contained in those items[.]" 135 P.3d at 142.  The court noted that the "acknowledgement which Douglass signed makes no mention of the arbitration provision contained in the Handbook, nor sufficiently informs him that the Handbook contains terms to which he is contractually obligating himself.  Nothing in the acknowledgement form that Douglass signed suggests . . . that he was entering into an arbitration agreement." *Id.*

In contrast to the circumstances in *Douglass*, the arbitration acknowledgement form ("Arbitration Form") signed by Mr. Manchester explicitly acknowledged the arbitration policy:  "My signature acknowledges that I have received, read, understand and agree to be bound by the contents of the Ceco Concrete Construction LLC Mediation and Arbitration policy."  Dkt. # 6-1 at 2 (Ex. 1 to Farrington Decl.).  The Arbitration Form also provides the following language below the signature block: "The entire policy is outlined on pages 14-16 of this handbook." *Id.*

The arbitration policy provides that covered claims or controversies arising out of the employee's employment or termination that are not resolved through informal

---

[4] The court notes that the acknowledgement form appears to reflect mutual assent to the arbitration policy on its face.  Dkt. # 6-1 at 2 (Ex. 1 to Farrington Decl.).

procedures, "shall be resolved through mediation and, if necessary, exclusive, final and binding arbitration as provided in this Policy." Dkt. # 6-1 at 6 (Ex. 3 to Farrington Decl.). The arbitration policy also provides that "to the fullest extent permitted by law, neither the Company nor the Employee will litigate Covered Claims against each other in court or in judicial-type proceedings before administrative agencies and each waives the right to a jury trial regarding such Covered Claims." *Id.* The policy further provides:

> All Employees who continue employment after May 1, 1997 will be deemed to have accepted this Policy as a new term and condition of employment and as the exclusive method to resolve Covered Claims not resolved through informal procedures.
>
> * * *
>
> **Mediation**
>
> Where a Covered Claim arises between the Company and the Employee which is not resolved through informal procedures, the Company and the Employee will attempt to settle the Covered Claim through mediation administered by the American Arbitration Association.
>
> * * *
>
> **Arbitration**
>
> If the Covered Claim is not resolved through mediation, the Covered Claim shall be settled by exclusive, final and binding arbitration in accordance with the national Rules for Resolution of Employment Disputes ("Arbitration Rules") which are in effect at the time the Covered Claim is submitted to the American Arbitration Association except to the extent the Arbitration Rules have been modified by this Policy.
>
> * * *
>
> **Change or Revocation**
>
> The Company reserves the right to change or discontinue this policy at any time upon prior written notice to Employees from the Human Resources Department or the President of the Company, except that any Covered Claim submitted under this policy to mediation or arbitration before the effective date of any modification or discontinuance shall continue to be resolved through this policy as it existed before modification or discontinuance.

*Id.* at 6-8.

Thus, the signed Arbitration Form and the arbitration policy seem to suggest that Mr. Manchester understood and assented to the arbitration agreement, except for the bold disclaimer across the top of the Arbitration Form: "TO BE COMPLETED BY EMPLOYEES NOT COVERED BY A COLLECTIVE BARGAINING AGREEMENT[.]"[5]  Dkt. # 6-1 at 2 (Ex. 1 to Farrington Decl.).  The arbitration policy reinforces that the policy applies to "all employees except those covered by Collective Bargaining Agreements."  Dkt. # 6-1 at 6 (Ex. 3 to Farrington Decl.).  Plaintiffs argue that, because of this disclaimer, the Arbitration Form is inapplicable on its face because Mr. Manchester was subject to a Collective Bargaining Agreement ("CBA").  Dkt. # 12 at 4-6.  Ceco argues that as a supervisor, Mr. Manchester was specifically excluded from coverage under the CBA.  Dkt. # 14 (Reply) at 6; # 16 (2d Farrington Decl.) ¶ 7; *see* Dkt. # 16-1 at 16 (Ex. 9 to 2d Farrington Decl.) ("supervisors as defined in the National Labor Relations Act" "are specifically excluded from coverage under this [CBA]").  Accordingly, whether or not Mr. Manchester was covered by the CBA, and therefore not subject to the Arbitration Form in the handbook, appears to depend on whether Mr. Manchester was considered a "supervisor" as defined in the National Labor Relations Act ("NLRA").

The NLRA defines "supervisor" as

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievance, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

---

[5] With this disclaimer, Ceco indicated its intent that employees who are covered by a CBA not be bound by the Arbitration Form in the handbook.

29 U.S.C. § 152(11).  Whether an individual is a supervisor requires a finding that (1) the employee has authority to engage in one of the activities listed in section 152(11); (2) the exercise of that authority requires the use of independent judgment; and (3) the employee holds the authority in the interest of the employer.  *Nat'l Labor Relations Bd. v. Health Care & Retirement Corp. of Am.*, 511 U.S. 571, 574 (1994); *Providence Alaska Med. Ctr. v. Nat'l Labor Relations Bd.*, 121 F.3d 548, 551 (9th Cir. 1997).

It is undisputed that Mr. Manchester had unrestricted authority to hire and fire wage earners, including cement mason workers, in his department.  Dkt. # 16 (Farrington Decl.) ¶¶ 3-4; *see also* Dkt. 1-1 (Compl.) ¶ 24 (alleging that Mr. Manchester had the ability to hire and fire his cement mason workers).  However, Ceco has not presented evidence or argument with respect to the second and third requirements.[6]  Additionally, both parties have presented evidence that Mr. Manchester was a dues-paying member of a union.  Dkt. # 12-1 (Manchester Decl.) ¶¶ 8, 9, 11, 12, Exs. A-D; # 16 (2d Farrington Decl.) ¶ 7.  Although courts have permitted supervisors to be union members (*see Fla. Power & Light Co. v. Int'l Brotherhood of Elec. Workers, Local 641*, 417 U.S. 790, (1974)), neither party has addressed relevant legal authority or provided argument regarding whether and how Mr. Manchester's status as a union member affects the determination of whether he is a "supervisor" under the NLRA for purposes of the Arbitration Form.

Accordingly, the court cannot make a determination as a matter of law regarding whether Mr. Manchester was a supervisor under the NLRA, and therefore cannot determine whether there was a meeting of the minds on all essential terms of the Arbitration Form to create a binding contract.  Since Ceco has not demonstrated that

---

[6] The court notes that plaintiffs also have not provided relevant legal authority or argument.  However, the initial burden of demonstrating the existence of a valid agreement falls on Ceco.

there was a meeting of the minds on the Arbitration Form, the court need not address whether there was bilateral consideration.

## B. Bedrock's Claim to Vacate the Arbitration Award

On May 22, 2013, the Honorable John C. Coughenour confirmed the arbitration award between Ceco and Bedrock, and found that Ceco was entitled to $91,604.32 from Bedrock. Case No. C13-691 JCC, Dkt. # 13. In that case, Bedrock opposed Ceco's motion to confirm the arbitration award, and moved the court for an order vacating the same arbitration award it seeks to vacate again here. Judge Coughenour confirmed the arbitration award, and denied Bedrock's motion to vacate the arbitration award.

Here, it appears that res judicata and/or collateral estoppel are appropriate with respect to a determination regarding the validity of the arbitration award.[7] *See Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 884 (9th Cir. 2007) (federal court sitting in diversity applies preclusion law of state in which it sits); *Williams v. Leone & Keeble, Inc.*, 171 Wash. 2d 726, 730-31, 254 P.3d 818 (Wash. 2011) (providing requirements for res judicata and collateral estoppel). However, defendants raised res judicata for the first time in reply, without addressing any legal authority, and never raised collateral estoppel. Accordingly, plaintiffs did not have the opportunity to respond to such arguments, and the court will not address an argument that was raised for the first time in reply.

Defendant argues that the claim by Bedrock is already the subject of another proceeding before Judge Coughenour, and so may be dismissed pursuant to this court's inherent authority to manage its own docket. Dkt. # 5 at 8. Defendant provides no legal

---

[7] Bedrock has conceded that the claim to vacate or overturn the arbitration award may well be moot where Judge Coughenour confirmed the arbitration award. Dkt. # 12 at 15-16. The court notes that whether or not the plaintiffs "remain very troubled by the conduct of the Arbitrator" is irrelevant to any of the legal theories asserted. The court reminds the parties of their duties under Rule 11, including that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. Proc. 11(b)(2).

authority in support of its argument in its moving papers, but argues in reply that it applies the "priority of action" rule under Washington and Ninth Circuit law.[8]  Plaintiffs have not had an opportunity to respond to this legal theory since it was raised for the first time in reply, and the court declines to consider it.

Defendant also argues that Bedrock's claim against Ceco for vacating the arbitration award fails to state a claim pursuant to Rule 12(b)(6).  Dkt. # 5 at 7.

Under the FAA, an arbitration award may be vacated (1) where the award was procured by corruption, fraud, or undue means, (2) where there was evident partiality or corruption in the arbitrators, (3) where the arbitrators were guilty of misconduct in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced, or (4) where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award was not made on the subject matter.  9 U.S.C. § 10(a).  An arbitration award may be vacated if it is completely irrational or constitutes manifest disregard for the law.  *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (1995).  Manifest disregard of the law means something more than just an error in law or a failure to understand or apply the law.  *Id.*  It must be clear from the record that the arbitrators recognized the applicable law and then ignored it.  *Id.*  Additionally, after an arbitrator discloses a possible conflict of interest, a party who fails to object and continues to participate in the arbitration, waives any claim that the arbitrator's award should be vacated by reason of corruption, fraud or undue means or by reason of partiality.  *See Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 666 (9th Cir. 2005); *Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004).

---

[8] It is unclear to the court whether Ceco believes Washington or Ninth Circuit law applies in this circumstance.

Here, defendants allege two grounds to vacate the arbitration award: material mistake of law and possible bias. Dkt. # 1-1 at 12-13, 17 (Compl.) ¶¶ 32-34, 52. These allegations are insufficient as a matter of law to state a claim for vacating the arbitration award. There are no allegations that would support the "manifest disregard for the law" standard, and there are no allegations that plaintiffs objected to the possible conflict of interest, or of otherwise evident impartiality.

Accordingly, the court GRANTS defendant's motion to dismiss Bedrock's claim against Ceco.

**C. Mrs. Manchester's Claims for Fraud and Misrepresentation**

Ceco concedes that Mrs. Manchester is not subject to any arbitration agreement. Rather, it seeks a stay as to her claims, or, alternatively, dismissal.

The only legal authority provided by Ceco that purportedly authorizes a stay of Mrs. Manchester's non-arbitrable claims is 9 U.S.C. § 3. Dkt. # 5 at 5-6.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Section 3 of the Federal Arbitration Act ("FAA") only "requires courts to stay litigation of arbitral claims pending arbitration of those claims in accordance with the terms of the agreement." *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1748 (2011); *see Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 854 (9th Cir. 2011) ("'By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'") (emphasis in original) (quoting *Dean Witter*, 470 U.S. at 218). Ceco concedes that Mrs. Manchester has not signed any arbitration agreement and that her claims are not arbitrable. As a nonsignatory, the mandatory stay in Section 3 of the FAA is inapplicable. Additionally, Ceco provides no legal authority

for a discretionary stay of non-arbitrable claims against a non-signatory. The court finds that Ceco has not demonstrated that a stay is appropriate in this case. *See Landis v. North American Co.*, 299 U.S. 248, 255 (1936) (party seeking "a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else."); *see also CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (stating that in determining whether to impose a discretionary stay, the court must weigh competing interests of possible damage that may result from the granting of a stay, the hardship or inequity a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof and questions of law that could be expected to result from a stay).

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "the court is to take all well-pleaded factual allegations as true and to draw all reasonable inferences therefrom in favor of the plaintiff." *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). However, claims for fraud and misrepresentation must be alleged with particularity. Fed. R. Civ. Proc. 9(b); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) ("In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b). . . . In other cases, however, a plaintiff may choose . . . to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements."). Rule 9(b) requires that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so

that they can defend against the charge. *Vess*, 317 F.3d at 1106. Averments of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged." *Id.* A plaintiff must set forth what is false or misleading about a statement, and why it is false. *Id.*

Under Hawaii law,[9] fraudulent misrepresentation requires a showing of (1) false representations that were made by the defendant, (2) with knowledge of their falsity or without knowledge of their truth or falsity, (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff's reliance on them.[10] *Ass'n of Apartment Owners of Newton Meadows v. Venture 15, Inc.*, 167 P.3d 225, 256 (Haw. 2007). Mrs. Manchester's fraudulent misrepresentation and inducement claims are predicated entirely on communications between Mr. Manchester and Ceco. Dkt. # 1-1 (Compl.) ¶¶ 15-18, 46, 48. Mrs. Manchester has not identified a single representation made by Ceco to her, or alleged any facts that would demonstrate that Ceco made any representation for the purpose of inducing, or in contemplation of, her reliance. Nor has Mrs. Manchester provided any legal authority that would allow her to allege a claim of fraudulent misrepresentation against a defendant who never made any representations to her directly.

---

[9] Plaintiffs explicitly assert that Hawaii law applies to the fraud and misrepresentation claims. Dkt. # 12 (Opp'n) at 3. Defendant has demonstrated tacit approval that Hawaii law applies where it has applied Hawaii law to the fraud claims. Dkt. ## 5 (Mot.) at 3 & 14 (Reply) at 3. Since both parties agree, the court has applied Hawaii law.

[10] Plaintiffs have not distinguished between their fraud and misrepresentation claims, or the elements of either claim. Upon review of the complaint and plaintiffs' opposition, it appears that plaintiffs allege claims for fraudulent inducement and fraudulent misrepresentation. These claims require essentially the same elements. *See Honolulu Fed. Sav. & Loan Ass'n v. Murphy*, 735 P.2d 807, 811 (Haw. Ct. App. 1988) ("To constitute fraudulent inducement sufficient to invalidate the terms of a contract, there must be (1) a representation of material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to his damage."). Accordingly, the court's analysis for both claims is the same.

Additionally, the false representation, to be actionable, must relate to a past or existing material fact, and not to the happening of future events. *Hawaii Cmty. Fed. Credit Union v. Keka*, 11 P.3d 1, 18 (Haw. 2000). Generally, fraud cannot be predicated upon statements that are promissory in nature at the time they are made and that relate to future actions or conduct. *Id.* A promise relating to future action or conduct will be actionable, however, if the promise was made without the present intent to fulfill the promise. *Id.*

Plaintiffs argue that the "existing material fact was that Ceco was offering full time continuous employment right then and there, not in some undefined future." Dkt. # 12 at 13; *see* Dkt. # 1-1 (Compl.) ¶ 16 ("The essence of the proposal from CECO was that . . . CECO was making a commitment to [Mr. Manchester] that he would be an employee of CECO until [Mr. Manchester] was ready to retire."). However, this "representation" of continued employment until retirement is a promise of future employment, not a representation of existing material fact. Upon review of the complaint, the court has not found any allegations that the promise was made without the present intent to fulfill the promise. For this reason as well, Mrs. Manchester's fraud claims fail.

The only other purported claim Mrs. Manchester alleges is a "claim" for punitive damages. However, an award of punitive damages is a remedy, not a separate cause of action. *See Kekona v. Bornemann*, 305 P.3d 474, 486 (Haw. Ct. App. 2013) ("An award of punitive damages is purely incidental to the cause of action. They may be awarded by the grace and gratuity of the law. They also act as a means of punishment to the wrongdoer and as an example and deterrent to others."). Punitive damages may be awarded only in cases where the wrongdoer has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations. *Id.* Accordingly, the court finds that "punitive damages" is not a separate cause of action.

Since Mrs. Manchester has not alleged sufficient facts for her fraud claims, she necessarily has not alleged sufficient facts to demonstrate wanton or oppressive conduct to entitle her to a remedy of punitive damages.

Accordingly, the court DISMISSES Mrs. Manchester's fraud claims.

**D. Conclusion**

For all the foregoing reasons, the court GRANTS in part and DENIES in part defendant's motion. Dkt. # 5. Bedrock's claim for vacating the arbitration award and Mrs. Manchester fraud claims are DISMISSED without prejudice. Defendant's motion to compel arbitration of Mr. Manchester's claims is DENIED. The court also DENIES plaintiff's motion to amend as premature. Dkt. # 13. Now that the parties have the benefit of the court's reasoning, plaintiff may file a renewed motion to amend the complaint within twenty-one days of this order. However, the parties must meet and confer in good faith regarding the amended complaint, including an exchange of the draft amended complaint, within fourteen days of this order. A stipulated motion to allow the filing of an amended complaint would be without prejudice to Ceco's ability to file a responsive motion or pleading.

Dated this 12th day of February, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER- 14