HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALAN MANCHESTER, et al.,

              Plaintiffs,

    v.

CECO CONCRETE
CONSTRUCTION, LLC,

              Defendant.

CASE NO. C13-832RAJ

ORDER

This matter comes before the court on defendant Ceco Concrete Construction, LLC's motion to dismiss plaintiffs Alan Manchester's and Suzanne Manchester's First Amended Complaint ("FAC").[1]  Dkt. # 27.  In the FAC, Mr. Manchester alleges claims

---

[1] On May 7, 2014, the court denied plaintiffs' motion to amend the complaint with respect to Bedrock Floors, Inc and allowed plaintiffs to file an amended complaint consistent with that order.  Dkt. # 24 at 6.  Ignoring the court's order, plaintiffs alleged claims on behalf of Bedrock in their First Amended Complaint.  The court GRANTS defendant's motion to dismiss claims asserted by Bedrock, and warns plaintiffs that any future violations of the court's orders may result in sanctions against plaintiffs and/or counsel for plaintiffs.

1  for (1) breach of contract, (2) breach of implied duty of good faith, (3) quantum meruit,
2  (4) unjust enrichment, (5) breach of implied employment agreement, (6) negligent
3  misrepresentation, (7) promissory estoppel, and (8) violation of the Hawaii Revised
4  Statutes ("HRS") § 388-10.  Dkt. # 25 (FAC).  Mrs. Manchester alleges a claim for
5  negligent misrepresentation based on the same allegations that support Mr. Manchester's
6  claim for negligent misrepresentation.  Dkt. # 25 (FAC) ¶ 46.

7      When considering a motion to dismiss for failure to state a claim under Federal
8  Rule of Civil Procedure 12(b)(6), "the court is to take all well-pleaded factual allegations
9  as true and to draw all reasonable inferences therefrom in favor of the plaintiff."  *Wyler*
10 *Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998).
11 However, the complaint must indicate more than mere speculation of a right to relief.
12 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[F]or a complaint to survive a
13 motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from
14 that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."
15 *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  "Threadbare recitals of
16 the elements of a cause of action, supported by mere conclusory statements, do not
17 suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).  Additionally, the
18 court is not required to accept as true conclusory allegations that are contradicted by
19 documents referred to in the complaint.  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293,
20 1295 (9th Cir. 1998).  Dismissal can be based on the lack of a cognizable legal theory or
21 the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v.*
22 *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

23     The court generally may not consider material beyond the pleadings in ruling on a
24 motion to dismiss.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).
25 However, where documents are referenced extensively in the complaint, form the basis of
26 plaintiffs' claim, or are subject to judicial notice, the court may consider those documents
27 in the context of a motion to dismiss.  *United States v. Ritchie*, 342 F.3d 903, 908-09 (9th

1   Cir. 2003).  The court may take judicial notice of facts not reasonably subject to dispute

2   because they are generally known within the trial court's territorial jurisdiction or can be

3   accurately and readily determined from sources whose accuracy cannot reasonably be

4   questioned.  Fed. R. Evid. 201(b).  Documents that are filed with the courts and are a

5   matter of public record are exactly such facts that are subject to judicial notice.  However,

6   the truth of factual matters asserted in court filings is not properly subject to judicial

7   notice.[2]

8   **A.  Breach of Contract and Breach of Implied Duty of Good Faith**

9         Defendant argues that Mr. Manchester's employment was for an indefinite period,

10   and therefore under Hawaii law,[3] "his employment was terminable at will[,]" which

11   means that "there was no employment contract to breach[.]" Dkt. # 27 (Mot.) at 8; # 33

12   (Reply) at 4.

13         Under Hawaii law, "in the absence of a written employment agreement, a

14   collective bargaining agreement, or a statutorily-conferred right, employment is at-will."

15   *Shoppe v. Gucci Am., Inc.*, 14 P.3d 1049, 1064 (Haw. 2000).  Thus, "an employment

16   contract of indefinite duration will generally be construed as giving rise to an at-will

17   employment relationship and [is] therefore terminable at the will of either party for any

18   reason or no reason."  *Id.*

19         The court agrees with defendant that "until he retired" and "for the next several

20   years" are not definite terms and there is no other definite term for employment in the

21   offer letter or any other writing provided to this court.  However, the offer letter attached

22   to the FAC indicates that plaintiff was a member of a union, and therefore subject to a

23   collective bargaining agreement.  Dkt. # 25-1.  In the court's experience, union members

24

25         [2] The court has not considered Mr. McArdel's declaration or accompanying exhibits,

26   except for Exhibit A, which is also attached to the FAC. Dkt. # 31.  The court has considered the exhibits attached to Mr. Downs's declaration. Dkt. # 28.

27         [3] The parties agree that Hawaii law applies to all claims alleged in the FAC.

1   are typically protected from being subject to termination at the will of the employer, and

2   collective bargaining agreements typically require cause for termination, or, at a

3   minimum, provide the union employee with an administrative procedure to challenge any

4   adverse employment action.  In any event, neither party has provided the court with a

5   copy of the collective bargaining agreement for the court to determine whether Ceco

6   could terminate union employees at-will.

7         Accordingly, the court finds that, taken together, the allegations in the complaint

8   and the offer letter plausibly suggest that Mr. Manchester was subject to a collective

9   bargaining agreement, and therefore his employment was not terminable at-will.[4]

10  **B.  Quantum Meruit and Unjust Enrichment**

11        Defendant argues that Mr. Manchester's quantum meruit and unjust enrichment

12  claims are preempted by Hawaii's payment of wages law, HRS § 388.  Dkt. # 27 at 14.

13  Defendant cites *Swartz v. City Mortg., Inc.*, 911 F. Supp. 2d 916, 938 (D. Haw. 2012) for

14  the proposition that the absence of an adequate remedy at law is the necessary

15  prerequisite to maintaining equitable claims.  *Id.*  The *Swartz* case relied on Hawaii cases

16  that stand for the general propositions that (1) unjust enrichment and quantum meruit

17  claims derive from principles of equity and quasi-contract, which are only available

18  where legal remedies are inadequate, and (2) the absence of an adequate remedy at law is

19  a necessary prerequisite to maintaining equitable claims.  *Id.* at 938 (citing *Porter v. Hu*,

20  169 P.3d 994, 1007 (Haw. 2007)).

21  _____

22        [4] The court notes that whether or not Mr. Manchester was subject to a collective
    bargaining agreement may raise other defenses not currently before the court.  The court also

23  notes that absent a collective bargaining agreement, Mr. Manchester has not alleged a definite
    term of employment and he has not alleged or demonstrated any other circumstances that would

24  limit the at-will employment doctrine.  The *Shoppe* court recognized that the previously
    unfettered right of employers to discharge employees can be contractually modified and, thus,

25  qualified by statements contained in employee policy manuals or handbooks issued by employers
    to their employees.  14 P.3d at 1064.  Mr. Manchester has not alleged any such policy manuals or

26  handbooks, or provided any other legal authority that would permit an exception to finding that

27  an agreement for an indefinite term of employment ("until he retired") is considered at-will.

1    Defendant argues that HRS § 388 is a comprehensive statute governing the

2  payment of wages which provides for a legal remedy.  Defendant fails to appreciate that,

3  at the pleading stage, plaintiffs may allege alternative theories of recovery.  Indeed, the

4  court will not know until it is presented with all relevant evidence, presumably on

5  summary judgment if there are no disputes as to any material fact, whether legal remedies

6  are inadequate.  Defendant has failed to provide the court with any binding legal

7  authority, or otherwise persuasive legal authority, that HRS § 388 "preempts" or prohibits

8  a plaintiff from also alleging unjust enrichment or quantum meruit.[5]  The court declines

9  defendant's invitation to prematurely dismiss an alternative theory of recovery, especially

10 where plaintiffs in other cases appearing before the Hawaii Supreme Court have

11 simultaneously alleged claims for unjust enrichment and violation of HRS § 388 for

12 unpaid wages.  *See generally Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 304-05

13 (Haw. 2010); *Durette v. Aloha Plastic Recycling, Inc.*, 100 P.3d 60, 63-64, 73-75 (Haw.

14 2004).

15

16

17

18    [5] In conducting its own research, the court has reviewed *Davis v. Four Seasons Hotel*

19 *Ltd.*, Case No. C08-525 HG-BMK, 2011 WL 5025521 (D. Haw. Oct. 20, 2011).  In *Davis*,
   plaintiffs conceded that they already had an adequate legal remedy for unpaid wages pursuant to

20 HRS § 388-6, but argued that their unjust enrichment claim should be allowed to continue as an
   alternative claim until the case was finally closed.  *Id.* at *6.  The court noted that plaintiffs

21 sought to preserve the claim, in the event that their wage claim was overturned on appeal.  The
   court then concluded: "Plaintiffs' [sic] have an adequate remedy in the form of a claim for

22 unpaid wages under H.R.S. § 388-6, which precludes the assertion of an unjust enrichment claim
   seeking the same damages.  If an appellate court rules that Plaintiffs' wage claim is unavailable,

23 Plaintiffs may request that the appellate court remand for reconsideration of their unjust
   enrichment claim."  *Id.* The court respectfully disagrees with this approach. Dismissing an

24 alternative claim until an appeals court can resolve whether a legal remedy under section 388-6
   is available is an incredible waste of resources for the parties and the court, and may result in

25 plaintiffs' inability to ever recover on an unjust enrichment claim if a legal remedy is found to be
   inadequate.  The court is not persuaded by the reasoning in *Davis*, and declines to adopt its

26 approach.

27

ORDER- 5

**C. Breach of Implied Employment Agreement**

Defendant argues that an employment agreement for a set term can only be created through a written instrument.  Dkt. # 27 at 9.  The court has already found that there is no writing before the court that demonstrates a definite term.  However, the court has also found that it appears that Mr. Manchester was subject to a collective bargaining agreement, which neither party has provided to the court.  That is sufficient to survive dismissal at this stage of the proceedings on the "at-will" grounds raised by defendant.

Defendant also argues that an implied employment agreement would be unenforceable under Hawaii's statute of frauds because any agreement that cannot be completed in one year must be in writing.  Dkt. # 27 at 9 (citing HRS § 656-1).

HRS § 656-1 provides that no action shall be brought and maintained upon "any agreement that is not to be performed within one year from the making" unless the promise, contract or agreement is in writing and signed by the party against whom it will be enforced.  HRS § 656-1(5).  However, the Hawaii Supreme Court has held that an oral promise is enforceable, notwithstanding the statute of frauds, where injustice can be avoided only by enforcement of the promise.  *Hamilton v. Funk*, 666 P.2d 582, 583 (Haw. 1983) (citing *McIntosh v. Murphy*, 469 P.2d 177 (Haw. 1970)).  In *McIntosh*, the Hawaii Supreme Court enforced an oral contract of employment for one year starting two days after the employee accepted the offer, notwithstanding the statute's one-year provision.  *McIntosh*, 469 P.2d at 180-82.  The *McIntosh* court adopted the Restatement (2d) of Contracts section 217A to give "the trial court the necessary latitude to relieve a party of the hardships of the Statute of Frauds."  *Id.* at 181.

Section 217A of the Restatement provides that a promise that the promisor should reasonably expect to induce action or forbearance and which does induce the action or forbearance is enforceable notwithstanding the statute of frauds if injustice can be avoided only by enforcement of the promise.  *Id.* (citing Rest. (2d) Contracts § 217A)). In determining whether injustice can be avoided, the following circumstances are

1  significant: (a) the availability and adequacy of other remedies, (b) the definite and

2  substantial character of the action or forbearance in relation to the remedy sought, (c) the

3  extent to which the action or forbearance corroborates evidence of the making and terms

4  of the promise, or the making and terms are otherwise established by clear and

5  convincing evidence, (d) the reasonableness of the action or forbearance, and (e) the

6  extent to which the action or forbearance was foreseeable by the promisor.  *Id.*

7        Plaintiffs allege that Ceco sought out Mr. Manchester to recruit him to become an

8  employee of Ceco.  Dkt. # 25 (FAC) ¶ 13.  During the employment negotiations, it was

9  understood by all parties that Mr. Manchester's employment with Ceco would necessarily

10  end the operations of Bedrock, which would terminate Mr. Manchester's employment

11  with Bedrock in which he made approximately $100,000.00 per year.  *Id.* ¶¶ 11, 15.

12  Plaintiff alleges that the essence of the proposal from Ceco was that Mr. Manchester

13  would become the Manager of the 'Place and Finish' Division of Ceco and would

14  continue to be part of the Cement Mason's Union, that the lives of Mr. Manchester and

15  Mrs. Manchester would be simplified by Mrs. Manchester no longer being effectively

16  self employed, that Mr. Manchester would be working shorter hours, that Mr.

17  Manchester's compensation would be equal to or more than what he and Mrs.

18  Manchester had earned together at Bedrock, and that Ceco was making a commitment to

19  Mr. Manchester that he would be a Ceco employee until he was ready to retire.  *Id.* ¶ 16.

20  Plaintiffs also allege that a Ceco representative indicated that Ceco would be Mr.

21  Manchester's "last stop" since he was in good health and that he could be working for

22  Ceco in his seventies.  *Id.*  After giving consideration to the nature of the written and

23  verbal representations made to Mr. Manchester by Ceco representatives, Mr. and Mrs.

24  Manchester agreed that Mr. Manchester should accept the offer, that Bedrock should

25  cooperate with the terms that Ceco was proposing, and that Mr. Manchester would

26  become a full-time Ceco employee.  *Id.* ¶ 17.

27

Taking these factual allegations as true, as the court must on a Rule 12(b)(6) motion, the court finds that plaintiff's reliance on Ceco's oral and written representations was foreseeable and was such that injustice could only be avoided by enforcement of the alleged implied agreement. *See McIntosh*, 469 P.2d at 181.  Accordingly, the court denies defendant's alternative argument for dismissal of this cause of action on statute of fraud grounds.

**D. Negligent Misrepresentation**

Defendant argues that plaintiffs' negligent misrepresentation claims fail because (1) it is a roundabout way of claiming that the alleged implied employment agreement should be enforced, (2) a negligent misrepresentation claim requires the false representation to relate to a past or existing material fact, and (3) Ceco's alleged oral statements are not justifiable because the offer letter, provided after the oral representations, did not have a term of employment and "until retirement' is an indefinite term.  Dkt. # 27 (Mot.) at 10-12.  Defendant also argues that Mrs. Manchester's claim is barred as a compulsory counterclaim.  *Id.* at 10.

With respect to the second argument, a negligent misrepresentation claim requires plaintiff to allege that (1) false information was supplied as a result of the failure to exercise reasonable care or competence in communicating the information, (2) the person for whose benefit the information is supplied suffered the loss, and (3) the recipient relies upon the misrepresentation. *Blair v. Ing*, 21 P.3d 452, 474 (Haw. 2001).  The Hawaii Supreme Court has indicated that, like the false representation in fraud claims, the negligent misrepresentation must relate to a past or existing material fact.  *See Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.*, 114 P.3d 929, 938-940 (Haw. 2005) (discussing fraud standard in the context of a negligent misrepresentation claim).  However, a promise relating to future action or conduct will also be actionable if the promise was made without the present intent to fulfill the promise. *Id.* at 939; *see Haw. Cmty. Fed. Credit Union v. Keka*, 11 P.3d 1, 18 (Haw. 2000) (fraud claim is actionable if

ORDER- 8

a promise relating to future action or conduct is made without the present intent to fulfill the promise).

The court has reviewed plaintiffs' FAC in detail, including paragraph 46 to which plaintiff directs the court.  Dkt. # 25.  The court has not found a single allegation that Ceco was without the present intent to fulfill the promises relating to any future conduct.[6] Given the absence of this allegation, the court finds that dismissal of plaintiffs' negligent misrepresentation claim is appropriate.

**E.  Promissory Estoppel**

Defendant argues that if the court were to find that a written contract exists between Ceco and Mr. Manchester, the promissory estoppel claim would fail.  Dkt. # 27 at 12.  The court has not made any findings regarding the existence of a written contract, and will not make such premature decisions on a Rule 12(b)(6) motion, which limits the court's review to the allegations in the complaint.  Mr. Manchester is permitted to allege alternative causes of action at this stage of the proceedings.

Defendant also argues that Mr. Manchester has failed to state a claim for promissory estoppel because he has not alleged the required elements.  Dkt. # 27 at 13. Specifically, defendant argues that Mr. Manchester has failed to allege a specific promise that his employment would be for a definite term, that Ceco could not reasonably foresee that Mr. Manchester would rely on that promise, and that his reliance was not reasonable. *Id.*

To allege a claim for promissory estoppel, a plaintiff must allege (1) a promise (2) that the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person, (3) which does induce such action or forbearance, and (4)

---

[6] The court notes that on February 12, 2014, this court previously concluded that it had not found any allegations that the promise of continued future employment was made without the present intent to fulfill the promise with respect to plaintiffs' fraud claims.  Dkt. # 19 at 13.

1   enforcement of the promise is necessary to avoid injustice. *Gonsalves v. Nissan Motor*

2   *Corp. in Haw., Ltd.*, 58 P.3d 1196, 1211 (Haw. 2002).

3          The court disagrees with defendant that alleging a "commitment to Mr.

4   Manchester that Mr. Manchester would be an employee of Ceco until he retired" does not

5   constitute a promise. Dkt. # 27 at 13.  In fact, the terms "commitment" and "promise"

6   are synonyms. *See* http://thesaurus.com/browse/commitment (last visited July 22, 2014).

7   More importantly, the Hawaii Supreme Court "has defined a 'promise' for purposes of

8   promissory estoppel to be 'a manifestation of intention to act or refrain from acting in a

9   specified way, so made as *to justify a promisee in understanding that a commitment has*

10  *been made*.'" *Gonsalves*, 58 P.3d at 1212 (emphasis added).

11         The court also disagrees that Mr. Manchester's reliance on Ceco's commitment of

12  employment until he retired was not foreseeable.  Mr. Manchester has alleged that Ceco

13  initiated discussions with him and pursued him robustly and even asked him what it

14  would take to get him to join Ceco.  Dkt. # 25 (FAC) ¶ 13-15.  Mr. Manchester alleges

15  that Ceco understood that the hiring of Mr. Manchester would end the operations of

16  Bedrock, and would entail hiring all the cement masons and purchase of equipment from

17  Bedrock.  *Id.* ¶ 15.  The negotiations also included that Mr. Manchester would become

18  the manager of a Ceco division, would continue to be part of his union, that Mr.

19  Manchester would be working shorter hours but his compensation would be equal to or

20  more than what he and Mrs. Manchester had earned together, and that Ceco made a

21  commitment that Mr. Manchester would be an employee of Ceco until Mr. Manchester

22  was ready to retire.  *Id.* ¶ 16.  Given that Ceco engaged in negotiations after asking what

23  it would take to hire Mr. Manchester, and knew that Bedrock operations would cease

24  completely, the court finds that, on these allegations, it was foreseeable that Mr.

25  Manchester would rely on the commitment of future employment until retirement.  The

26  court also finds that based on the allegations in the complaint, that reliance was

27  reasonable.

1    Accordingly, Mr. Manchester may pursue his claim for promissory estoppel.

2    **F.  Violation of HRS § 388-10**

3    Defendant argues that Mr. Manchester did not work long enough to earn the

4    $20,000 bonus because he worked for Ceco for less than two years—from April 2010 to

5    December 2011.  Dkt. # 27 at 15.

6    HRS § 388-10 provides that any employer who fails to pay wages without

7    equitable justification shall be liable to the employee, in addition to the wages legally

8    proven to be due, for a sum equal to the amount of unpaid wages and interest at a rate of

9    six percent per year from the date that the wages were due.

10   Mr. Manchester alleges that pursuant to the terms of his employment, Mr.

11   Manchester was guaranteed a bonus in the amount of $20,000, which was never paid.

12   Dkt. # 25 (FAC), ¶ 50.  Mr. Manchester alleges that his bonus was due and payable upon

13   the last day of his employment on December 31, 2011, in the amount of $20,000, and that

14   Ceco failed to pay the bonus without any equitable justification. *Id.*  The offer letter

15   attached to the FAC indicates the following under "Annual Bonus":  "10% of job cost

16   savings for scope managed by you for the 1st year and 15% for the 2nd year[.] Minimum

17   of $20,000 guaranteed for each of the first two years."  Dkt. # 25-1 (Ex. A to FAC).

18   The court finds that these allegations, along with the offer letter, are sufficient to

19   survive dismissal at this stage of the proceedings.[7]

20   **G.  Conclusion**

21   For all the foregoing reasons, the court GRANTS in part and DENIES in part

22   defendant's motion to dismiss.  Dkt. # 27.  Plaintiffs' claim for negligent

23

24

25   [7] The court notes that based on Mr. Manchester's employment dates, he was only four
26   months shy of his second year anniversary.  At this stage of the proceeding, the court cannot
     determine as a matter of law whether defendant was equitably justified in withholding the
27   minimum "guaranteed" $20,000 bonus for his second year.

misrepresentation is dismissed, and Bedrock and Mrs. Manchester are dismissed from the case.

Dated this 28th day of July, 2014.


The Honorable Richard A. Jones
United States District Judge