HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALAN MANCHESTER et al.,

Plaintiff,

v.

CECO CONCRETE CONSTRUCTION, LLC,

Defendant.

CASE NO. C13-832RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on the parties' cross motions for summary judgment. Dkt. ## 72, 75. This matter arises from a dispute regarding plaintiff Alan Manchester's employment with defendant Ceco Concrete Construction, LLC ("Ceco") and his subsequent discharge. Mr. Manchester alleges five causes of action in his Second Amended Complaint: (1) quantum meruit, (2) unjust enrichment, (3) promissory estoppel, (4) violation of Hawaii Revised Satutes 388-10, and (5) negligent misrepresentation. (SAC) Dkt. # 70. Ceco seeks summary judgment on all claims. (Mot.) Dkt. # 72. Mr. Manchester seeks summary judgment only as to three elements of

his promissory estoppel claim. (Mot.) Dkt. # 75. For the reasons stated below, Ceco's motion is GRANTED and Mr. Manchester's motion is DENIED.

## II. BACKGROUND

This matter arises from a dispute regarding Mr. Manchester's employment with Ceco and subsequent discharge. Mr. Manchester's claims arise out of: (1) Ceco's employment of Mr. Manchester from on or about April 26, 2010, through on or about December 31, 2011, (2) Mr. Manchester's decision to accept that employment, and (3) the financial reckoning between Ceco and Bedrock/Mr. Manchester after their relationship ended. (SAC) Dkt. # 70. Mr. Manchester claims that Ceco broke its alleged oral promise to employ him until he retired; that Ceco was unjustly enriched by the work Mr. Manchester performed as Ceco's employee; and that Mr. Manchester was entitled to a second annual bonus that Ceco did not pay. *Id.*, ¶¶ 35-46.

Prior to his involvement with Ceco, Mr. Manchester was employed as the project manager of Bedrock, his wife's construction company operating in Hawaii. *Id.* ¶ 8. Bedrock performed "flatwork" concrete construction (which refers to concrete work that is installed on a flat surface). *Id.* ¶ 9. Mrs. Manchester was the sole shareholder, director, and officer of Bedrock. *Id.* ¶ 8.

Ceco approached Mr. Manchester with the idea of creating a new "Place and Finish" flatwork division within Ceco, which at that time had substantial "form work" operations (which refers to vertical construction work that requires vertical forms), but did not have significant "flatwork" operations. *Id.* ¶¶ 13, 16. The idea was that Ceco would essentially assume Bedrock's flatwork operations and Mr. Manchester would become an employee of Ceco. *Id.*, ¶¶ 14, 15.

Initially, Ceco employee Greg Tadie, a long-time friend of Mr. Manchester, began discussing the potential terms of his employment. *Id.* Later on, Mr. Tadie's supervisor Kipley Farrington came to Hawaii to join the negotiations. *Id.*, ¶¶ 14, 15. Ceco's

president, Larry Mayo, was also involved. (Farrington Dep.) Dkt. # 73-1, p. 12-13. Although Mr. Manchester was a member of the Cement Mason's Union ("the Union"), it is undisputed that Mr. Manchester negotiated with Ceco directly; nowhere does he allege that a Union representative negotiated on his behalf. *See generally* SAC.

Ceco was unsure whether the Place and Finish division would ultimately be successful and Mr. Manchester was aware of this fact. (Manchester Dep.) Dkt. # 73-1, p. 4 ("I was told, we don't know exactly how this is going to work down the road. This is new for Ceco to set this division up. Here's how we are starting."). Ceco conveyed to Mr. Manchester, however, a "pretty strong indication that [they] needed to have him," and that Ceco's "vision" or "idea" was that Mr. Manchester would be with Ceco for the "long haul." (Tadie Dep.) Dkt. # 73-1, p. 25. According to Mr. Tadie "neither party contemplat[ed] . . . that it was not going to work out or that it was going to end short, not even a hint on either part, so we didn't really spend a lot of time making arrangements" for what would happen if the relationship did not work out. *Id.*, p. 26.

On April 14, 2010, Ceco provided Mr. Manchester with an offer letter signed by Mr. Tadie. (SAC) Dkt. # 70, ¶ 17. The offer included the following terms: (1) full-time employment as Manager of Concrete Finishing Operations for Ceco's Northwest Region; (2) allowing continued membership in the Cement Masons Union; (3) annual pay of 40 hours per week for 52 weeks at an hourly rate of $55.15 per hour; (4) full union benefits; (5) an annual bonus of at least $20,000 for each of the first two years of employment; (6) a sign-on bonus of $25,000; (7) allowances for a truck and a house; (8) two weeks' vacation per year; and (9) reimbursement of business travel. *Id.* ¶ 17; (Offer) Dkt. # 70-1. In addition, the letter stated that Mr. Manchester's "expertise would be leveraged throughout the Pacific Northwest with primary emphasis on Hawai'i for the next several years," and that "within the first 12 months of employment Ceco will agree to discuss in good faith different salary/bonus options with you [Plaintiff]." *Id.*

Notably, the offer letter does not specify any term of employment—as Mr. Manchester himself admitted. *Id.*; (Manchester Dep.) Dkt. # 73-1, p. 4. Tadie and Farrington, too, testified that Ceco did not provide Mr. Manchester with any "guarantee" of employment for a specific period of time. (Tadie Dep.) Dkt. # 73-1, p. 26; (Farrington Dep.) Dkt. # 73-1, p. 11-12, 17. On May 3, 2010, Plaintiff signed a Promissory Note to Ceco in exchange for a $25,000 signing bonus. (Manchester Dep.) Dkt. # 73-1, p. 4; (promissory Note) Dkt. # 73-1, p. 31. The Promissory Note provides that "[t]he undersigned [Plaintiff] agrees that . . . Ceco expressly reserves the right to terminate the undersigned employee's employment at any time," and also contemplates that Mr. Manchester might be "terminated for cause" or might "voluntarily leave Ceco[.]" *Id.*

Ceco, Bedrock and Mr. Manchester agreed that Ceco would assume Bedrock's existing backlog of work. (Arb. Order) Dkt. # 73-1, p. 36, ¶ 7; SAC ¶ 15. But as to three of Bedrock's contracts, Ceco and Bedrock agreed that Bedrock would remain in business for Ceco's benefit. *Id.*, p. 37, ¶¶ 8-10; (SAC) Dkt. # 70, ¶¶ 20-22. According to their agreement, Bedrock was to pass through to Ceco the monies it received from these three projects, and Ceco was to reimburse Bedrock for its expenses incurred in carrying out the projects. *Id.*, p. 37, ¶¶ 9-10. Plaintiff, however, failed to account for either the amounts that were to be passed through to Ceco, or for the expenses to be reimbursed, such that Ceco had no way of verifying whether the reimbursement amounts claimed by Bedrock were correct. *Id.*, p. 38, 44 ¶¶ 11-14, 21-22.

Eventually, Ceco determined that the Place and Finish division and the Hawaii operation as a whole would not be successful. In May 2011, Ceco terminated Tadie's employment. (SAC) Dkt. # 70, ¶ 27. In August 2011, Ceco decided to entirely shut down the Place and Finish division in Hawaii. (Farrington Dep.) Dkt. # 73-1, p. 14. Mr. Manchester's employment was terminated effective December 31, 2011, after one year and seven months with Ceco. (SAC) dkt. # 70, ¶¶ 28, 30. Ultimately, Ceco shut down its entire Hawaii operation.

In 2012, Ceco commenced an arbitration proceeding against Bedrock alleging that Mr. Manchester had failed to pass through to Ceco the monies Bedrock received from the three projects pursuant to their agreement. The arbitrator in those proceedings found that, with regard to the three projects, "Bedrock established an express trust . . . for the benefit of Ceco, pursuant to which Bedrock, as trustee, agreed to disburse all of the proceeds of Bedrock's contracts" for those three projects. (Arb. Order) Dkt. # 73-1, p. 38, ¶ 12. The arbitrator found that Bedrock owed Ceco a total of $91,604.32, which included the amounts Bedrock owed to Ceco based on the three projects, offset by Bedrock's accounted-for costs and by payment of one of the two bonuses to which Mr. Manchester now claims he is entitled. *Id.*, pp. 35-36, ¶ 3. This award to Ceco also included the amount of $19,570.83 in arbitration costs, and $47,425.99 in attorney fees and costs, finding that "[i]t is more likely than not that the very need for a hearing in this matter was caused by Bedrock's failure to timely (or ever) provide a reasonable accounting of receipts and expenses" and that "[t]o award any attorney fees to Bedrock or to not award attorney fees in full to Ceco would reward Bedrock and punish Ceco for Bedrock's breach of its fiduciary duty to Ceco." *Id.*, pp. 35-36, 44, ¶¶ 3, 22. The arbitrator additionally found that Plaintiff himself had breached his fiduciary duty to Ceco by failing to account for his spending of Ceco's money in connection with the three projects. *Id.*, pp. 39, 44, ¶¶ 15, 21-22. The Honorable John C. Coughenour confirmed the arbitration award on May 22, 2013. (Order Confirming Arbitration Award) Dkt. # 73-1, pp. 52-57.

On January 30, 2013, Ceco filed a complaint against Mrs. Manchester, in King County Superior Court seeking to hold her personally liable for the amounts Bedrock owed Ceco. (Compl.) Dkt. # 28-1. Judge Cayce held that Mrs. Manchester is an "alter ego" of Bedrock, and thus "personally liable for the May 22, 2013 federal judgment issued against Bedrock Floors, Inc. in favor of Ceco Concrete Construction, LLC." (Order) Dkt. # 28-1, p. 14. Ceco alleges that, to-date, that judgment remains unpaid.

### III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000). Credibility determinations and the weighing of the evidence are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255. For purposes of summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)).

### IV. ANALYSIS

**A.  Impact of the Collective Bargaining Agreement**

Throughout this litigation, Mr. Manchester has taken inconsistent positions regarding the applicability of the Union's CBA. By its terms, the CBA does not apply to supervisors:

> The following classifications and employees are specifically excluded from coverage under this Agreement: office clerical employees, confidential employees, professional employees, watchpersons, and supervisors as defined in the National Labor Relations Act, as amended.

(CBA) Dkt. # 16-1, p. 16 (emphasis added). In his first amended complaint, Mr. Manchester left open the *possibility* that he was subject to the CBA, but also included several allegations indicating that he was a supervisor and, therefore, exempt from the CBA. For example, Mr. Manchester alleged that he was hired to be the manager of an entire division at Ceco and that he had the authority to hire and fire his cement masons. (FAC) Dkt. # 25, ¶ 24. He also alleged that he negotiated the terms of his employment directly, and not through Union representatives. *Id.*, ¶ 18. These facts strongly suggested that he was a supervisor. However, because the litigation was still at the pleading stage and the court had not yet seen a copy of the CBA, the court declined to dismiss Mr. Manchester's claims for breach of contract, breach of the implied duty of good faith and breach of an implied employment agreement. (Order) Dkt. # 36, pp. 3-4. The court reasoned that CBAs typically represent exceptions to the "at-will" employment doctrine and create a type of contractual relationship between employers and employees because they require a showing of "just cause" before termination. Accordingly, the court held that *if* Mr. Manchester was indeed subject to a CBA, then he could possibly maintain his contractual claims. *Id.* The court allowed those claims to go forward on this very narrow basis.

Mr. Manchester later filed a motion to amend the complaint to add allegations stating that he actually lacked the authority to hire and fire cement masons. (Mot.) Dkt. #49. He did so in an attempt to show that he was not a supervisor and was, therefore, subject to the CBA. *Id.* The court denied his motion on futility grounds and on judicial estoppel grounds. (Order) Dkt. # 69, pp. 4-5.

In his motion to amend, Mr. Manchester stated that he had no intention of arguing that Ceco had breached the CBA. (Mot.) Dkt. # 42, p. 4 ("Plaintiff has not claimed that CECO violated any of the specific provisions of the CBA."). Accordingly, the court

found that amending his allegations to show that he was subject to the CBA would have been futile. (Order) Dkt. # 69, pp. 4-5.

The court also declined to allow the amendment because the allegations Mr. Manchester proposed to add directly conflicted with allegations that he made in his original complaint. The only justification he provided for that change of position was that he made an "unfortunate misstatement." Dkt. # 42, p. 6. He never explained, however, why he failed to correct this misstatement when he had the opportunity to do so in his first amended complaint. Because the doctrine of judicial estoppel prohibits such flip-flopping, the court declined to allow the amendment. (Order) Dkt. # 69, p. 5 (citing *Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). The court also dismissed Mr. Manchester's contractual claims, because without the CBA's "just cause" termination provision, he could not maintain those claims. As the court previously observed, "until he retired" and "for the next several years" are not definite terms of employment. (Order) Dkt. # 36, p. 3.

Now in his second amended complaint, Mr. Manchester again attempts to allege that he is subject to the CBA. (SAC) Dkt. # 70, ¶ 17 ("Mr. Manchester had been…subject to the [CBA] for approximately twenty (20) years, and had no intention of giving up his Union status or protections."). Of course, Ceco has seized upon this opportunity to dispose of Mr. Manchester's claims. According to Ceco, if Mr. Manchester is indeed subject to the CBA, then all of his claims have been waived because he failed to follow the required grievance procedure. (Mot.) Dkt. # 72, p. 11. The mistake in Ceco's logic is that it depends upon Mr. Manchester's *allegations*. Just because he has "unequivocally" *alleged* that he is subject to the CBA, does not mean that he is actually subject to the CBA as a matter of law. As the court previously held, plaintiff has not set forth sufficient facts (let alone evidence) to show that he is not a supervisor and not exempt from the terms of the CBA. It is undisputed that Mr. Manchester was the manager of an entire division within Ceco, that he supervised a

1  number of cement masons and that he negotiated the terms of his employment directly,
2  rather than through the Union. His conclusory *allegation* to the contrary does not change
3  the court's holding.
4     Further, even if Mr. Manchester were subject to the CBA, Ceco has not
5  demonstrated that his claims fall within the CBA's definition of a "grievance" as would
6  be required to trigger the grievance procedure. (CBA) Dkt. # 16-1, p. 67 (defining
7  grievance as "a complaint filed by the Union or by any employee covered by the
8  Agreement alleging a violation of a specific provision of this Agreement.").
9     Accordingly, the CBA does not operate to bar Mr. Manchester's claims.
10 **B. Negligent Misrepresentation**
11    A negligent misrepresentation claim requires Mr. Manchester to allege that (1)
12 false information was supplied as a result of the failure to exercise reasonable care or
13 competence in communicating the information, (2) the person for whose benefit the
14 information is supplied suffered the loss, and (3) the recipient relies upon the
15 misrepresentation. *Blair v. Ing*, 21 P.3d 452, 474 (Haw. 2001). The Hawaii Supreme
16 Court has indicated that, like the false representation in fraud claims, the negligent
17 misrepresentation must relate to a past or existing material fact. *See Joy A. McElroy,*
18 *M.D., Inc. v. Maryl Group, Inc.*, 114 P.3d 929, 938-940 (Haw. 2005) (discussing fraud
19 standard in the context of a negligent misrepresentation claim). However, a promise
20 relating to future action or conduct will also be actionable if the promise was made
21 without the present intent to fulfill the promise. *Id.* at 939; *see Haw. Cmty. Fed. Credit*
22 *Union v. Keka*, 11 P.3d 1, 18 (Haw. 2000) (fraud claim is actionable if a promise relating
23 to future action or conduct is made without the present intent to fulfill the promise).
24    The court dismissed this claim once before because Mr. Manchester had failed to
25 allege that Ceco was "without the present intent" to fulfill a promise of employment.
26 (Order) Dkt. # 36, p. 8-9. The court later allowed Mr. Manchester to revive this claim
27 when he alleged facts tending to show that Mr. Tadie made promises to him, while acting

on behalf of Ceco and as its agent. (Order) Dkt. # 69, pp. 3-4; (Mot.) Dkt. # 55, p. 3. Thus, the court reasoned that Mr. Manchester could possibly make out a negligent misrepresentation claim if he could show that Ceco's agent made a promise without the present intent to perform that promise.

Here, however, there is no dispute that Mr. Tadie made promises with the present intent of performing those promises. (Tadie Dep.) Dkt. # 73-1, p. 27 ("Q. Now when you were saying that you and Ceco as a whole, when it was discussing the arrangement with Buzz coming to work at Ceco and Ceco's commitment to Hawaii for the long haul, do you believe that Ceco's intent at that time was to be committed to Hawaii for the long haul? A. Absolutely."). Indeed, plaintiff makes no argument to the contrary. (Plf. Dep.) Dkt. # 73-1, p. 5 ("I don't think Greg Tadie intentionally said anything untruthful."). Instead, plaintiff argues that there was some sort of disconnect between Tadie's intent and Ceco's intent. (Opp.) Dkt. # 78, p. 10. Thus, according to Mr. Manchester, when a company's agent makes a statement on the company's behalf, his personal intent (and the intent communicated to him by the company) can be distinguished from the company's concealed intent with respect to that statement. *Id.*

Mr. Manchester cites no authority to support this novel argument. Indeed, it is a common principle of agency law that the representations of an agent acting within his apparent authority are imputed to the principal. *Au v. Au*, 626 P.2d 173, 178 (Haw. 1981). Thus, Tadie's "present intent to perform" and his representations regarding Ceco's "present intent to perform" are imputed to Ceco. Moreover, nothing in the record suggests that Ceco had any sort of concealed mal-intent regarding Mr. Manchester's employment. Indeed, as stated by Mr. Tadie, "[t]he whole discussions were, you know – again, I'm going to use the word "long haul," because neither party, contem – not even – there was not even a tinker of contemplation that it was not going to work out or that it was going to end short, not even a hint on either part, so we didn't really spend a lot of

time making arrangements of what happens if he leaves early. We didn't really dwell a whole much. It just wasn't contemplated." (Tadie Dep.) Dkt. # 73-1, p. 26.

Because there is no disputed issue of fact as to this necessary element of Mr. Manchester's negligent misrepresentation claim, the claim fails as a matter of law. Accordingly, Ceco is entitled to summary judgment.

**C. Equitable Claims: Quantum Meruit, Unjust Enrichment & Promissory Estoppel**

Mr. Manchester's claims for quantum meruit, unjust enrichment and promissory estoppel are equitable claims. *See, e.g.*, *Shahata v. W Steak Waikiki, LLC*, 721 F. Supp. 2d 968, 981 (D. Haw. 2010) ("Promissory estoppel is an equitable remedy."); *Wagner v. World Botanical Gardens, Inc.*, 268 P.3d 443, 456 (Haw. 2011) ("Quantum meruit is an equitable claim."); *see also Hawaii Ventures, LLC v. Otaka, Inc.*, 164 P.3d 696, 741-42 (Haw. 2007) (merging concepts of quantum meruit and unjust enrichment).

Ceco argues that Mr. Manchester is collaterally estopped from pursuing any equitable claims because "he who comes into equity must come with clean hands." *7's Enters., Inc. v. Del Rosario*, 143 P.3d 23, 33 (2006); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, (304 F.3d 829, 841 (9th Cir. 2002) ("The unclean hands doctrine 'closes the doors of a court of equity to one tainted with inequitableness of bad faith relative t the matter in which he seeks relief."). According to Ceco, Mr. Manchester has unclean hands because an arbitrator previously determined that he breached his fiduciary duties to Ceco, (Mot.) Dkt. # 72, pp.15-17, and this award was confirmed by District Court Judge John C. Coughenour. (Order) Dkt. # 73-1, pp. 52-57.

Collateral estoppel applies to preclude an issue adjudicated in an earlier proceeding if: (1) the issue was necessarily decided at the previous proceeding and is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is

asserted was a party or in privity with a party at the first proceeding. *Rey'n's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006).

Mr. Manchester argues that collateral estoppel does not apply here because he was not a named party to the previous proceeding. (Opp.) Dkt. # 78, pp. 14-16. While that may be technically true, the law nevertheless allows for nonparty preclusion. *Taylor v. Strugell*, 553 U.S. 880, 893 (2008). Where a nonparty is adequately represented by someone with the same interests who was a party to the previous suit, the nonparty is bound by that judgment. *Id.* at 894. The purpose of collateral estoppel is to bar "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id.* at 892 (quoting *Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001). By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," collateral estoppel protects against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–154 (1979).

Here, Bedrock was owned by Mrs. Manchester and, according to the arbitrator, "the testimony was that it was run by her husband Alan "Buzz" Manchester." (Arb. Order) Dkt. # 73-1, p. 36, ¶ 7. Mr. Manchester had notice of the prior suit and actively participated in it on behalf of a company owned by his wife and operated by him. Thus, he was adequately represented by a party who had the same interests as him. The arbitrator expressly found that Mr. Manchester, acting on behalf of Bedrock, breached a fiduciary duty owed to Ceco. *Id.*, p. 39, ¶ 15 ("I also kept in mind that Mr. Manchester, in spending Ceco's money had a fiduciary duty to do it wisely and had to be able to support the expenditures."); *Id.*, p. 41, ¶ 15(f) ("These charges may be for exactly what Mr. Manchester suggests, but as a fiduciary spending Ceco's money, Mr. Manchester has the burden to show that they were legitimate charges, and that has not been done."); *Id.*,

p. 42, ¶ 15(h) ("The testimony was clear on cross examination that Mr. Manchester knew how to submit Ceco expense statements for such charges; that he had done so; and that he had been reimbursed accordingly. There was no explanation offered by Mr. Manchester as to why that had not been done in these instances."). Indeed, the majority of the opinion relates to Mr. Manchester's conduct.

Judge Coughenour later confirmed the arbitrator's findings in a written opinion. (Order) Dkt. # 73-1, pp. 52-57. Accordingly, this issue of law has already been decided and Mr. Manchester is estopped from re-litigating it. Because unclean hands is an affirmative defense to equitable claims, here, it bars plaintiff from pursuing his claims for quantum meruit, unjust enrichment and promissory estoppel. *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360 (1995) (recognizing "[e]quity's maxim that a suitor who engaged in his own reprehensible conduct in the course of the transaction at issue must be denied equitable relief because of unclean hands.").

Accordingly, Ceco is entitled to summary judgment on these claims.

**D.  Violation of Hawaii Revised Statutes 388-10**

Mr. Manchester also alleges that pursuant to the terms of his employment, he was guaranteed a bonus in the amount of $20,000, which was never paid. (SAC), ¶ 42. The offer letter attached to the SAC indicates the following under "Annual Bonus": "10% of job cost savings for scope managed by you for the 1st year and 15% for the 2nd year[.] Minimum of $20,000 guaranteed for each of the first two years." (Offer) Dkt. # 70-1.

HRS § 388-10 provides that any employer who fails to pay wages without equitable justification shall be liable to the employee, in addition to the wages legally proven to be due, for a sum equal to the amount of unpaid wages and interest at a rate of six percent per year from the date that the wages were due. However, an employee may forfeit his right to compensation if he breaches a fiduciary duty to his employer. *See* Restatement Second of Agency 469 (1958) ("[I]f such conduct constitutes a willful and deliberate breach of his contract of service, he is not entitled to compensation even for

properly performed services for which no compensation is apportioned."). *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1085 (9th Cir. 2003).

Here, as set forth above, Mr. Manchester's breach of fiduciary duty has already been established in a prior proceeding. Accordingly, he has forfeited his right to the second-year bonus. Additionally, it is undisputed that plaintiff was terminated four months shy of the end of his second year of employment. Thus, there is no evidence demonstrating that he earned the second-year bonus. *See Timpe v. WATG Holdings, Inc.*, 2008 WL 2355611, at * 7 (D. Haw. June 10, 2008) (finding that plaintiff was not entitled to benefits for which he did not become eligible before her employment was terminated, and therefore "had not earned any such compensation.").

Accordingly, Ceco is entitled to summary judgment as to this claim.

## V. CONCLUSION

For the foregoing reasons, Ceco's motion for summary judgment (Dkt. # 72) is granted and Mr. Manchester's motion for summary judgment (Dkt. # 75) is DENIED. The clerk shall enter judgment in favor of Ceco and against Mr. Manchester. The clerk is further directed to terminate any pending motions and to close this case.

Dated this 22nd day of September, 2015.

The Honorable Richard A. Jones
United States District Judge